UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE No. 20-cr-20267-GRAHAM/MCALILEY

UNITED STATES OF AMERICA,

    Plaintiff,

v.

TAVALAS ARCURMS,

    Defendant.
_____/

# REPORT AND RECOMMENDATION
## ON DEFENDANT'S MOTION TO SUPPRESS

Defendant Tavalas Arcurms filed a Motion to Suppress. (ECF No. 29). The government filed a response, and Defendant a reply, and the Honorable Donald L. Graham referred the Motion to me for a report and recommendation. (ECF Nos. 31, 32, 33). For the following reasons, I recommend that the Court deny the Motion.

**I.  Background**

The Indictment in this case charges that on September 1, 2020, Defendant committed the crimes of possession of unauthorized access devices, aggravated identity theft and possession of a firearm and ammunition by a convicted felon. (ECF No. 23). One day prior, on August 31, 2020, a state court judge issued a search warrant for a residence that Defendant occupied, located at 253 N.W. 52nd Street, Miami, Florida (the "Premises"). During the execution of that warrant, law enforcement seized firearms,

1

ammunition and various identification, credit, and debit cards with other person's names. In his Motion, Defendant argues that the search warrant was not supported by probable cause and therefore all evidence seized pursuant to that warrant should be excluded from evidence at the trial.

The search warrant is attached as an exhibit to Defendant's Motion. (ECF No. 29-1).[1] Detective Yunieski Arriola, of the Miami-Dade Police Department, Criminal Investigations Division, Homicide Bureau, Homicide Street Violence Task Force, prepared his sworn affidavit and the warrant application package. In the probable cause section of his affidavit, after summarizing his considerable experience investigating narcotics offenses, violent crimes and gangs, Det. Arriola succinctly set forth evidence to support the warrant.

First, he noted that about a year and a half earlier, on March 28, 2019, Defendant was convicted in state court of felony possession of a firearm by a convicted felon. And, before that, on December 7, 2017, Fabien Charles Nathaniels ("Nathaniels") was convicted in state court of attempted second-degree murder, robbery with a deadly weapon and possession of a firearm by a convicted felon.

Next, Det. Arriola relayed that on August 21, 2020, ten days before he submitted the search warrant, he saw a video that was posted that day, at 9:05 a.m., on Defendant's Instagram account "daveboipooh." The video showed Nathaniels holding a rifle with his

---

[1] I rely entirely on that document in the following description of the warrant and application. *See* ECF No. 29-1.

right hand and a cell phone in his left hand. The Detective included in his affidavit two "screen shots" of Nathaniels holding the firearm.

Det. Arriola then relayed that at that time, both Defendant and Nathaniels were not in custody, but were under court supervision which included electronic monitoring. Det. Arriola secured electronic monitoring reports for both men which confirmed that both were at the Premises on the date and time when Defendant posted the video of Nathaniels. In fact, those records showed that Defendant was at the Premises both before and after the post - from August 18, 2020 at 11:34 am through August 21, 2020 at 11:29 am - which suggests that Defendant was residing there at the time he made the Instagram post. Det. Arriola concluded that he believed there was probable cause that firearms, ammunition and related firearm paraphernalia, cell phones and possibly clothing Nathaniels wore when the video was made, would be found at the premises and that this would be evidence of the commission of the crime of a felon being in possession of a firearm.

As mentioned, the state court judge issued the warrant on August 31, 2020, and law enforcement executed the warrant the following day. As noted, during the search, law enforcement found both firearms and evidence of identity theft and fraud. Det. Arriola immediately applied for and obtained a second search warrant, that authorized the seizure of the evidence of identity theft and fraud, and pursuant to that second warrant the officers seized that evidence. (ECF No. 29, at 4).

## II.  Analysis

The Fourth Amendment requires that a search warrant be issued only when there is probable cause to believe that an offense has been committed and that evidence exists in

the place the government asks to search. *United States v. Betancourt*, 734 F.2d 750, 754 (11th Cir.1984) (citing *Zurcher v. Standford Daily News*, 436 U.S. 547, 558 (1978).

The Supreme Court explained that "probable cause deals 'with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Illinois v. Gates*, 462 U.S. 213, 241 (1983) (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)); *see also United States v. Miller*, 24 F.3d 1357, 1361 (11th Cir. 1994). In part, this is a recognition that "affidavits are normally drafted by nonlawyers in the midst and haste of a criminal investigation." *Gates*, 462 U.S. at 235 (citation and quotation marks omitted).

This Court's after-the-fact review of probable cause in Det. Arriola's search warrant application is confined to the face of that application. *Aguilar v. Texas*, 378 U.S. 108, 109 n.1 (1964) ("It is elementary that in passing on the validity of a warrant, the reviewing court may consider only information brought to the magistrate's attention.") (citation omitted) (abrogated on other grounds by *Illinois v. Gates*, 462 U.S. 213 (1983)); *see also United States v. Lockett*, 674 F.2d 843, 845 (11th Cir. 1982). The Court does not conduct a *de novo* review to determine the sufficiency of the affidavit. *Gates*, 462 U.S. at 236. Rather, reviewing courts must pay "great deference" to the issuing judge's determination of probable cause. *Id.* (quoting *Spinelli v. United States,* 393 U.S. 410, 419 (1969)). As the Supreme Court explained:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found at a particular place. And the duty of the

4

>  reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

*Gates*, 462 U.S. at 238-39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)) (alterations in original)); *see also United States v. Brundidge*, 170 F.3d 1350, 1352-53 (11th Cir. 1999). "Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Gates*, 462 U.S. 237, n.10 (quotation marks and citation omitted).

The search warrant application presented clear evidence that ten days prior, two individuals, who had not long before been convicted of felony crimes that involved their possession of firearms, were at the Premises, and that one of them – Defendant – posted a video to social media of the other – Nathaniels – holding a rifle. Both individuals had been convicted of possession of a firearm by a convicted felon, and they therefore clearly knew that their possession of a firearm could easily subject them to arrest and further prosecution. Moreover, both were under the supervision of a court. For judges, law enforcement officers and defendants under court supervision, it is common knowledge that that the commission of a crime while under supervision can cause the immediate revocation of that supervision, and a new round of prosecution. Nonetheless, Defendant openly displayed his on-going association with firearms by posting the video on his Instagram account. Both Defendant's and Nathaniels' blatant, public display of firearms, following their history of unlawful possession and/or use of firearms, strongly suggested they continued to possess, or be in the presence of, firearms and that they showed little, if any, caution to conceal this.

The location monitoring evidence confirmed that both Defendant and Nathaniels were together at the Premises – which was a residence – at the time Defendant publicly posted the video. Moreover, the location monitoring data confirmed that Defendant was continually at the Premises for a couple days before that, and while this may or may not have been his permanent residence, it plainly was his residence at that time. It is common sense that people tend to keep possessions of value at their residences. It follows that if Defendant and Nathaniels continued to possess firearms and related paraphernalia, the Premises where Defendant posted this video, was a likely place to find this.

What was not known was if Defendant took the video of Nathaniels holding the rifle while at the Premises, or whether that rifle, or any other firearm or ammunitions or paraphernalia would be found at the Premises ten days later. The Fourth Amendment's probable cause standard did not require proof of this. Rather, it required evidence of a "fair probability" that that evidence would be found at the Premises. *Gates*, 462 U.S. at 238. For the reasons stated, the search warrant application did that. More to the point, this record demonstrates that the judge who issued the search warrant had a "substantial basis for concluding that probable cause existed." *Id*.

Defendant makes several arguments why Det. Arriola's application did not provide the state court judge with a substantial basis for finding a fair probability that the firearm evidence would be found at the Premises. Defendant's arguments assume far more of the probable cause standard – and this Court's deferential standard of review of the issuing judge's decision – than the Fourth Amendment mandates.

First, Defendant faults the warrant application for not stating when and where the video of Nathaniels was recorded. As Defendant correctly notes, the warrant does not exclude the possibility that the video was not made at the Premises. Defendant goes further and suggests that the video might be so old that it was taken at a time when it was not unlawful for Nathaniels to possess a firearm. (ECF No. 29 at 8). We know from the warrant application that Nathaniels was convicted on December 7, 2017 of, *inter alia*, possession of a firearm by a convicted felon, which means that Nathaniels had at least one felony conviction before that date. For Defendant to be correct then, the video would have been made years earlier. Defendant further argues that it is possible that the rifle was a replica firearm, and that Nathaniel's possession of it was lawful for that reason. It is thus conceivable, but highly unlikely, that on August 21, 2020 Defendant posted a video of Nathaniels possessing a replica firearm, and/or of a firearm that was created years earlier. The possibility that this was so, was not the question the issuing judge had to ask herself. Rather, she had to consider "all the circumstances set forth in the affidavit," in the light of the "practical considerations of everyday life" and ask herself if there was a "fair probability" that law enforcement would find firearms or their accoutrements at the Premises. *See Gates*, 462 U.S. at 238, 241. For the reasons stated here, she certainly had a "substantial basis", *id*. at 238, for concluding "yes".

### III.   Conclusion and Recommendation

For the foregoing reasons, I conclude that the search warrant was supported by probable cause. I therefore **RESPECTFULLY RECOMMEND** that the Court **DENY** Defendant's Motion to Suppress. (ECF No. 29).

**IV. Objections**

**No later than fourteen days from the date of this Report and Recommendation** the parties may file any written objections to this Report and Recommendation with the Honorable Donald L. Graham, who is obligated to make a *de novo* review of only those factual findings and legal conclusions that are the subject of objections. Only those objected-to factual findings and legal conclusions may be reviewed on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985), 28 U.S.C. § 636(b)(1); Fed.R.Crim.P. 59(b), 11th Cir. R. 3-1 (2016).

DONE AND RECOMMENDED in chambers at Miami, Florida this 7th day of May 2021.

*[signature]*
CHRIS MCALILEY
UNITED STATES MAGISTRATE JUDGE

Cc: The Honorable Donald L. Graham
      Counsel of record